IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BIOVEST INTERNATIONAL, INC., | Case No. 8:13-BK-02892-KRM |
| Debtor. | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTOR'S MOTION FOR FINAL ORDER AUTHORIZING THE DEBTOR, *NTER ALIA*, TO OBTAIN POST-PETITION FINANCING**

The Official Committee of Unsecured Creditors (the "Committee"), by and through undersigned counsel, objects to the motion of the debtor in possession Biovest International, Inc. (the "Debtor") for authorization to, *inter alia,* obtain post-petition financing (ECF # 25, the "Motion") and states as follows:

**Introduction**

1.  While the Committee is supportive of the Debtor, its mission, and its efforts to reorganize, it objects to certain overreaching aspects of the debtor in possession financing proposed by the Motion (the "Financing"). At bottom, the Motion seeks to implement an impermissible *sub rosa* plan which, if approved, will predetermine the outcome of this chapter 11 case and preclude any party in interest from having a fair opportunity to negotiate plan terms with the Debtor and its secured creditors. In fact, any such negotiation and change to the Plan is, as requested by Debtor and its Lenders, an event of default, which would trigger relief from stay and an end to the case. If the Financing is allowed pursuant to the Debtor-in-Possession Credit

2016022-5

and Security Agreement (Exhibit "A" to the Motion, the "Loan Agreement"),[1] the Debtor will lose much of its autonomy in this chapter 11 proceeding, the Committee will be severely hamstrung in its ability to negotiate a plan of reorganization, and the Court will not be able to grant future relief, absent triggering defaults under the Financing. The excesses of the Financing outlined below must be eliminated or modified so as to level the playing field in this chapter 11 case and allow the Debtor the time and resources it needs to bring the important drugs it is developing to the FDA for approval and, hopefully, to the patients who need them.

## Background

2. The Debtor filed its petition for protection under chapter 11 of the Bankruptcy Code on March 6, 2013 (the "Petition Date").

3. The Debtor filed its proposed Chapter 11 Plan of Reorganization (ECF # 16, the "Plan") and proposed Disclosure Statement (ECF # 42, the "Disclosure Statement"), each of which have been pre-negotiated with the Lenders and have the Lenders' support. The Court has set a hearing on the adequacy of the Disclosure Statement for April 18, 2013 at 3:30 p.m. (ECF #55)

4. On March 13, 2013, the Court held a hearing on the relief sought by the Motion and entered an Interim Order on March 14, 2013 (ECF # 49)

5. On March 19, 2013, the United States Trustee appointed the Committee (ECF # 76).[2] The Committee immediately met and chose its counsel: Olshan Frome Wolosky, LLP and Genovese Joblove & Battista PA. Counsel will be submitting retention applications shortly.

6. On March 19, 2013, the United States Trustee also appointed a Committee of Equity Holders (ECF # 77, the "Equity Committee").

---

[1] As yet there is no proposed Final Order. The Committee reserves the right to supplement this Objection to include any additional terms included in a proposed Final.
[2] The Committee is comprised of Whitebox Multi-Strategy Partners, LP, Land Dynamics, Inc. and Spruce LLC.

**Objection**

**The Financing Constitutes an Impermissible Sub Rosa Plan**

7.     The Loan Agreement improperly ties the Financing to the Plan by fixing the amount of stock the Lenders must receive (90%) under the Plan (Loan Agreement, § 4.1(d)(i)) and requiring the Court confirm the Plan that was filed in the first days of the case, without any process to test the valuation of the Debtor, and without any ability for the Committee to determine if the 90/10 split proposed in the Plan is fair and equitable. Similarly, the Plan (§ 8.16) contemplates that management, officers and directors will receive 15,000,000 shares of Biovest stock, 50% _more_ stock than is being provided under the Plan to the unsecured creditors and equity holders (combined) of the Debtor. This simply shocks the conscience. Certainly, this case dispositive issue cannot, and should not, be resolved in the context of section 364 financing.

8.     Similarly, it is also an event of default for the Debtor, or any other party, to even file a motion seeking approval of a plan or disclosure statement that proposes any modification or deviation from the 90% stock issuance to the Lenders (Loan Agreement, § 7.1(j)) or to seek any section 363 sale or similar transaction that may be available in the future (Loan Agreement §§ 6.12, 6.13).

9.     The Debtor also, improperly, cannot even pay off or prepay the Advances. (Loan Agreement, § 2.6). Accordingly, the Debtor is precluded from finding a replacement lender, from paying off the Financing in cash (regardless of what the Debtor's valuation may be at confirmation) or from modifying the essential terms of the Plan, even if an alternative exists that complies with the Bankruptcy Code and even if such a plan paid the Lenders in full.

10.    In an amended version of the Loan Agreement that was recently transmitted to the parties, which Loan Agreement makes the Financing even more onerous than the original version, it appears that the Lenders have made the Events of Default even _more onerous_, by

making it an Event of Default if a non-debtor party even <u>files a motion</u> (i) to seek to file a competing plan (Loan Agreement, § 7.1(k)) (ii) to appoint a trustee or examiner (§ 7.1(p)) or (iii) to terminate exclusivity (§ 7.1(q)).  In fact, to ensure that there can be no plan negotiations, in the amended Loan Agreement, it is now an Event of Default if within 24 hours of the entry of the order approving the Disclosure Statement, which must be done by April 20, 2013, "the Borrower has not received a written expression of support for the Plan by both the Committee of unsecured creditors…and the Committee of equity security holders…"  (§ 7.1(f)).  Newly added Event of Default in Loan Agreement section 7.1(p) is also objectionable, as it creates a new event of default if "the accrued amount of administrative expenses of each of the retained professionals in the Chapter 11 Case exceeds the amounts for each such professional set forth in the Chapter 11 Case Budget and such excess amounts are not (i) **waived** by any such professional or (ii) agreed to be paid by the Lenders. (emphasis added)"  Once again, the DIP loan seeks to impermissibly alter the Bankruptcy Code's requirements in section 1129 and give the Lenders far too much leverage.

**<u>The Financing Implements Excessive Lender Control</u>**

11.     *Participation on the Debtor's Board.*  In section 6.17(a) of the Loan Agreement labeled "Monitoring and Other Rights", the Lenders are given "the right to participate through the Board of Directors and management in the operation of the Borrower, and to receive, contemporaneously with the delivery to the members of the Board of Directors, all materials, including but not limited to, all financial reports, financial forecasts, research and development reports, product development reports and management presentations."  In addition, it provides that the Lenders shall participate in "weekly management calls" and "monitor" the Minnesota operation.  Despite the fact that Mr. Osman, essentially the lead Lender, is already a member of the Board, all of the Lenders are now essentially putting themselves on the Board of Directors

4

and inserting themselves into management. While reporting and access to information is certainly appropriate (see, Interim Order at para 26), these provisions are excessive and should be eliminated from the Loan Agreement.

12.     *Enforcement of Default Remedies Without Court Approval.* The ability of the Lenders to enforce default remedies on 3 days notice without court approval was stricken from the Interim Order. However, that right survives in § 7.2 of the Loan Agreement. It should be clarified in the Final Order that Court approval for relief from stay is required, on notice to the Committee, the U.S. Trustee and other parties in interest who request notice, with an opportunity to be heard. Absent a showing of compelling circumstances, such immediate relief from the automatic stay is impermissible under the *Administrative Order Establishing Initial Procedures in Chapter 11 Cases Filed in the U.S. Bankruptcy Court of the Middle District of Florida* (the "Administrative Order"). Given the onerous Events of Default, which have become more extreme in the latest version of the Loan Agreement, notice and a hearing (with the burden of proof as required under applicable law, not as reflected in paragraph 19 of the proposed Final Order) prior to any relief from stay is an absolute essential protection for the estate.

13.     *Excessive and Intrusive Reporting.* Similarly excessive and intrusive are the provisions of the Loan Agreement which require the Debtor to provide to the Lenders copies of all bankruptcy pleadings two business days <u>before</u> filing and to immediately provide to the Lenders copies of everything provided to the Committee. (Loan Agreement, §§ 6.1(f), (g) and (h))

14.     The Committee does not object to the required monthly Budget Variance Reports also (Loan Agreement, § 6.1(f)), but requests that such be provided to the Committee contemporaneously. Similarly, the Committee does not object to the requirement that the Debtor

afford the Lenders "reasonable access" to its premises and books and records. (Interim Order, ¶ 26) However, to require that the Lender receive everything that is provided to the Committee essentially eliminates the necessary interplay between a debtor and a committee in chapter 11 so as to allow such parties to comply with their respective fiduciary duties to, among other things, maximize the recovery to the various constituencies in chapter 11.

15.  *Lender Liability Releases.*  Paragraph 10 of the Interim Order insulates the Lenders from any "liability to any third party nor shall they be deemed to be in control of Biovest's operations or to be acting as a 'controlling person,' 'responsible person' or 'owner or operator" with respect to Biovest's operation or management…." At best, such a release should be reserved for treatment in the plan of reorganization.  This provision should not be included in the Final Order.

16.  *Pre-Petition Lender Releases.*  Similarly, by paragraph 20 of the Interim Order, the Debtor provides the Lenders in their pre-petition capacities with complete releases, discharges and waivers from all claims and causes of action of any kind, including those under the Bankruptcy Code, related to the Pre-Petition Loan Documents.  Although this provision expressly carves out creditors, stockholders, Committees and parties in interest of the Debtor, such releases, even by the Debtor, should be left for a plan of reorganization.  In addition, it should be clarified that the carve out includes all Debtor claims which may be asserted derivatively. (Interim Order, ¶ 20)

17.  In addition, the release provision of the Interim Order (¶ 20) includes waivers of avoidance actions against the pre-petition secured lenders without the detailed explanation of compelling circumstances required by the Administrative Order.

18.     *More Time Needed to Review Liens.*  The Interim Order provides inadequate time for the Committee to file a challenge to the pre-petition liens and loans.  Thirty days from the entry of the Interim Order is simply not sufficient.  The Committee seeks the more standard 60 days from the appointment of the Committee, which would be May 20, 2013.  This should be in synch with the confirmation process as the hearing on the adequacy of the Disclosure Statement is set for April 18, 2013. Moreover, it is objectionable that the Loan Agreement and proposed FInal Order (at para. 17) precludes the Committee's use of cash collateral to even review and investigate the Lender's liens. It should be made clear that one or both official committee's may use cash collateral to investigate the liens and claims of and against the Lenders.

19.     *Inadequate Funding for the Committee Professionals.*  The $45,000 included in the Financing Budget and the Interim Order (¶ 17) is inadequate for the Committee to investigate the pre-petition liens and loans and to fully participate in the chapter 11 case, including negotiating with the Debtor and the secured creditors with regard to the reorganization plan. Moreover, the Budget only goes through June 19, 2013 despite the fact that the deadline for going effective is July.  The Committee Budget line item should be increased as should the Carve Out.  Other Issues

20.     *506(c) Waiver.*  Under the Administrative Order, a Section 506(c) waiver is an extraordinary term which requires a detailed explanation of the compelling circumstance necessitating such relief.  The Motion does not provide such explanation for the 506(c) waiver. Moreover, it limits the rights of any trustee appointed in the case.   The Committee objects to the 506(c) waiver, particularly given (i) this is a "lender driven case" and (ii) the Debtor's inadequate budget for the Committee's professionals.

21. *Chapter 5 Causes of Action as Adequate Protection.* Chapter 5 causes of action should not be any part of the Lenders' collateral. These actions are expressly excluded from the Collateral for the Financing in paragraph 12 of the Interim Order. That same express exclusion should also be included in paragraph 13 of the Final Order describing the Lenders' adequate protection liens and super-priority claims. Under the Administrative Order, all liens on avoidance actions require a detailed explanation of the applicable compelling circumstances. The Motion does not provide such explanation.

## Conclusion

22. The Committee reiterates its broad support for the Debtor and its business. However, for the reasons and with regard to the specific objections set forth above, the Committee respectfully requests that the Court deny the Debtor the authority to enter into the Financing as currently proposed.

Dated:
    March 22, 2013

**OLSHAN FROME WOLOSKY LLP**
Proposed counsel to the Committee
Park Avenue Tower
65 east 55th Street
New York, NY 10022
Telephone: 212-451-2300

By: /s/ Adam H. Friedman
    Adam H. Friedman
    Pro Hac Vice to be filed
    afriedlman@olshanlaw.com

**GENOVESE JOBLOVE & BATTISTA P.A.**
Proposed counsel to the Committee
Miami Tower
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile : (305) 349-2310

By: */s/ Paul J. Battista*
Paul J. Battista, Esq.
Fla. Bar No. 884162
pbattista@gjb-law.com